UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF NEW YORK

--------------------------------------X
MICHAEL EDWARDS,

                    Plaintiff,

      -against-        Case No.:
                       1:24-cv-08137-PK

STERN & STERN, P.C.,

                    Defendants.

--------------------------------------X




        VIDEOCONFERENCE DEPOSITION OF

           KENNETH STERN, ESQ.

        Wednesday March 26, 2025









Reported by:
DONNA PALMIERI
JOB NO. J1263991



Page 29

Kenneth Stern

I'm trying to ask a more specific question and I apologize if I'm asking this badly.

Was the address on the Affidavit of Service for the first lawsuit, in fact, not his address.

A.   Yes, he had moved and we did not know that he had moved at the time, so yes, we sued him at an address that he had moved from, yes.

Q.   Let's talk about the second lawsuit.

Mr. Edwards filed an Order to Show Cause to vacate the judgment in the second lawsuit, correct?

A.   Correct.

Q.   And he claimed in his affidavit that he did not live at that address where service was allege, correct?

A.   Correct.

Q.   And when you received the Order to Show Cause you knew, in fact, that Mr. Edwards did not live at the address of service for the second lawsuit, correct?

Page 30

Kenneth Stern

A.   Correct.  That's when we found out, yes.  That's when it was brought to my attention, yes.

Q.   But you knew that as soon as you got the Order to Show Cause, right, that it wasn't his address?

A.   When we received the Order to Show Cause, yes.

Q.   So why didn't you immediately vacate that default judgment and discontinue the action immediately?

A.   Because the law has changed.  So there's take two reasons, one, because we have a duty to our client to try to represent them the best that we can and we were simply trying to see whether we could settle.  Mr. Edwards admitted that he owed the debt on several occasions in court.  He said that he owed the debt. We were trying to see if he would just settle for anything.  My limited involvement at that time when they brought this to my attention was a simple recommendation to my sister that look,

Page 31

Kenneth Stern

settle it for anything that you could settle it for so that way we basically cut our losses, just do whatever you could.  I got permission from the client to take whatever I need to take.  So I was trying to simply settle the matter. That's why we tried to contact him to do that.

The second unfortunate reality of this is that the law had changed.  The statute was now three years and we were going to be out of stat once we vacated, the case was then uncollected.  So given this position of having the case uncollected or trying to settle it, I said see if we can get anything and that was the end of my involvement in this case until we got the order saying it was vacated and I sent him a check and that was the end of my involvement in the entire case.  My advice was to try to settle whatever they could.  It went all the way to a decision.  The case was vacated.  I paid him back and that was

Page 32

Kenneth Stern

the end of my involvement.

Q.   You believe that you would only be able to settle if the judgment was in place?

A.   No, I knew that it would be vacated.  We didn't serve him properly. I was only hoping that the man would be honest enough to pay his debt, even a part of it, 50 percent, 25 percent.  He knew he owed the debt.  It was over $5,000.  I know that I pay my bills.  I would hope that the gentleman would say you know what, you're willing to settle for 1000, 1500 that he would stand up and say, you know.  Also as a member of MCU you have certain advantages.  Being a member you get cheaper rates, cheaper this.  I could assist him to continue to be a member and continue to do things. So all I tried to do at that time and all I said was see if you could settle.  He had certain advantages in his side if it could be settled.  He never called us back.  He never did anything, fine.  It

